# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| **ANNMARIE PLAINTIFF,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 3:17-cv-01862-N** |
| | § | |
| **BEACON BAY ASSET** | § | |
| **MANAGEMENT, LLC,** | § | |
| **JAMES VIRGIL WILLIS, and** | § | |
| **GLENN KLUPSAK** | § | |
| *Defendants.* | § | |

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

Plaintiff Annmarie Plaintiff ("Plaintiff") originally filed her case in state court on May 5, 2017.  Defendants Beacon Bay Asset Management, LLC ("Beacon Bay") and James Virgil Willis ("Willis") removed the case to this court on July 14, 2017 and filed a 12(b)(6) Motion to Dismiss for failure to state claims upon which relief can be granted. Plaintiff files Plaintiff's Amended Complaint and would show the Court as follows:

## I.
## PARTIES

1.    Plaintiff is a natural person who is a citizen of the State of California.

2.     Defendant Beacon Bay is a privately-held Texas limited liability company and a Registered Investment Advisory (RIA) with office locations in Arizona and Nevada.

3.     Defendant Willis is a natural person who is a citizen of the State of Arizona.

4.     Defendant Klupsak is a natural person who is a citizen of the State of Nevada.

## II.
## SUBJECT MATTER JURISDICTION

5.     Pursuant to 28 U.S.C. § 1332(a)(1), this Court has jurisdiction over the subject matter of this action because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

## III.
## PERSONAL JURISDICTION & VENUE

6.     This Court may properly exercise personal jurisdiction over Defendants because Defendants have sufficient minimum contacts with the State of Texas, Plaintiff's causes of action arise from or relate to Defendants' contacts with the State of Texas, Defendants have continuous and systematic contacts with the State of Texas, and the court's exercise of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice.

7.     Pursuant to 28 U.S.C. § 1391(a), venue is proper in the Northern District of Texas because a written contract between Plaintiff and the Defendants states "In the event of any dispute regarding this agreement, venue shall be exclusively in Dallas County, Texas and shall be governed by Texas law."

**IV.**
**BACKGROUND AND NATURE OF CASE**

8.     This is a suit about the mismanagement of Plaintiff's retirement funds by Registered Investment Advisors or Investment Advisor Representatives.

9.     Plaintiff is a 48-year-old single mother raising a 3-year-old son while working full-time as a flight attendant for Southwest Airlines, where she has worked for 22 years.

10.     Plaintiff has never had any personal experience investing her money and has always relied upon professionals.

11.     Plaintiff and Defendant Klupsak met some time prior to 2004 when Plaintiff was living in Thousand Oaks, California. Defendant Klupsak resided in Oakland Hills, California at that time.

12.     Plaintiff and Defendant Klupsak remained good friends throughout the years, saw each other socially and asked each other for favors.  For example, Plaintiff kept Defendant Klupsak's cat for many months, and Plaintiff allowed Defendant Klupsak to leave his car parked in Plaintiff's driveway for several months. Plaintiff

3

and Defendant Klupsak exchanged Christmas and birthday cards and consulted with each other about their respective relationships. They both shared a love of cats. Plaintiff also had Defendant Klupsak listed as her companion to fly for free at Southwest, a perk that non-married employees of Southwest receive.

13.     Plaintiff trusted Defendant Klupsak so much that when Plaintiff created a trust, she made Defendant Klupsak a co-Trustee of her trust.

14.     After many years of being friends, Defendant Klupsak began giving Plaintiff financial advice regarding her brokerage accounts at another firm.

15.     In 2003, Defendant Klupsak started his own investment advisory company called Tahoe Partners Asset Management.

16.     Some time later, Defendant Klupsak convinced Plaintiff to allow him to manage her IRA account.

17.     Plaintiff had inherited the IRA account from her deceased mother years earlier.

18.     Plaintiff told Defendant Klupsak that she had inherited the IRA from her deceased mother and that she wanted the money protected from losses and that she did not want to take risk with these funds.

19.     Defendant Klupsak agreed to invest Plaintiff's IRA money in accordance with Plaintiff's investment objectives and risk tolerance.

20.     Upon information and belief, a written Agreement was entered into

4

between Plaintiff and Defendant Klupsak for Defendant Klupsak to manage Plaintiff's IRA account on a discretionary basis.

21.　At the time, Defendant Klupsak was a registered investment advisor and licensed to do business in California, where Plaintiff resided, through Tahoe Partners Asset Management.

22.　Defendant Klupsak owed Plaintiff fiduciary duties.

23.　At issue in this case is Defendant Klupsak's management of Plaintiff's IRA account from March 2010 to August 2012.

24.　Between March 2010 and August 2012, Defendant Klupsak violated his fiduciary duties by subjecting Plaintiff's IRA account to great risk and cost.

25.　Defendant Klupsak failed to invest Plaintiff's IRA within the parameters of her risk tolerance and investment objectives.

26.　Defendant Klupsak instead invested Plaintiff's IRA in unsuitable investments and engaged in a risky option trading strategy;

27.　Defendant Klupsak concentrated Plaintiff's IRA account in equities and equity put and call options, increasing the risk to the account.

28.　Defendant Klupsak churned Plaintiff's IRA account, generating a 5.3 account turnover rate.

29.　Defendant Klupsak made over $1.8 million in purchases and $1.5 million in sales in Plaintiff's IRA account when the average equity in Plaintiff's IRA

account was roughly $260,000;

30.    Defendant Klupsak subjected Plaintiff to unreasonable and unnecessary costs by having her pay both commissions to the brokerage firm and management fees to Defendant Klupsak.

31.    Defendant Klupsak failed to advise Plaintiff of the wrongdoing alleged in paragraphs 24 – 30.

32.    Defendant Klupsak led Plaintiff to believe that her investments were being handled in accordance with her wishes.

33.    Defendant Klupsak caused an out of pocket loss in Plaintiff's IRA account of $106,113.

34.    If Defendant Klupsak had managed Plaintiff's IRA account in a manner consistent with Plaintiff's investment objectives and risk tolerance, Plaintiff would have made $173,382.

35.    In August 2012, Defendant Klupsak advised Plaintiff that he was going merge his business with Defendant Willis and Defendant Beacon Bay.

36.    Defendant Klupsak wrote an email to Plaintiff dated August 1, 2012 that stated, "[M]y plan for next year has been to merge my business with my friend Jim Willis from Dallas… Jim and I have known each other for almost 20 years and he is a well established Financial Advisor in the Dallas area."

37.    Defendant Willis is the Founder, Owner and Managing Member of

Beacon Bay.

**38.**     Defendant Beacon Bay had filed regulatory documents reporting that Beacon Bay has two employees who perform investment advisory functions – Glenn Klupsak and James Willis.

**39.**     Defendant Klupsak has filed regulatory documents identifying Defendant Beacon Bay as his "Employer".

**40.**     On August 13, 2012, Plaintiff entered into a written Investment Advisory Agreement ("the Agreement") with Defendant Beacon Bay, a Texas company.

**41.**     The Agreement was signed by Defendant Klupsak for Defendant Beacon Bay.

**42.**     In the Agreement, Defendant Beacon Bay and Defendant Klupsak agreed to manage Plaintiff's IRA account and to "place and hold the Client's interests above its own, pursue objectivity, and avoid conflicts of interest" and will "discern the Client's wants, needs and concerns, then exercise discretion in recommending and providing only those services which address the Client's goals on a value-added basis and discourage those which do not".

**43.**     Defendants Klupsak and Beacon Bay managed Plaintiff's IRA's account, on a discretionary basis, from September 2012 to February 2016 through a brokerage account in Plaintiff's name at TD Ameritrade.

44.     Upon information and belief, Defendant Willis was the individual with trading authority on Plaintiff's IRA account at TD Ameritrade.

45.     However, the first five months of trading activity in Plaintiff's IRA occurred in advance of both Defendant Klupsak and Defendant Willis obtaining their California registration with the Investment Adviser Division of the California Department of Business Oversight.

46.     California requires that investment advisors rendering investment advisory services to California residents on behalf of a registered investment adviser must first be registered in the state.

47.     Defendant Klupsak and Defendant Willis registered in California through Beacon Bay on May 16 and 17 respectively, 2013. All trading in Plaintiff's IRA account prior to these dates was unlicensed and unregistered.

48.     Between December 31, 2012 and May 15, 2013, Defendants made almost 300 trades in Plaintiff's IRA account, consisting of primarily put and call option trades and caused Plaintiff an out of pocket loss of at least $75,000.

49.     Whether Defendant Willis or Defendant Klupsak made the unlicensed trades, they were unauthorized.

50.     Defendant Klupsak and Defendant Willis owed Plaintiff fiduciary duties.

51.     In addition, Defendant Willis was responsible for supervising

Defendant Klupsak.

52.    Defendant Beacon Bay and Defendant Willis have filed regulatory documents identifying Defendant Klupsak as a "Supervised Person".

53.    Between December 31, 2012 and February 29, 2016, all three Defendants failed to invest Plaintiff's IRA within the parameters of her risk tolerance and investment objectives.

54.    All three Defendants breached their fiduciary duties to Plaintiff.

55.    All three Defendants invested Plaintiff's IRA in unsuitable investments and engaged in a risky option trading strategy;

56.    All three Defendants churned Plaintiff's IRA account, generating a 7.8 account turnover rate.

57.    All three Defendants made over $2.5 million in purchases and $2.5 million in sales in Plaintiff's IRA account.

58.    The average equity in Plaintiff's IRA account was less than $115,000;

59.    All three Defendants utilized margin in Plaintiff's IRA account, further increasing Plaintiff's costs by requiring the payment of margin interest fees;

60.    Between the fees of Defendants and the commissions and margin interest Plaintiff paid, Plaintiff would have had to make 8% just to break even.

61.    All three Defendants subjected Plaintiff to unreasonable and unnecessary costs by having her pay both commissions to the brokerage firm and

management fees to Defendant Klupsak.

62.     All three Defendants failed to advise Plaintiff of the wrongdoing alleged in paragraphs 44 - 61.

63.     Defendant Klupsak led Plaintiff to believe that her investments were being handled in accordance with her wishes while at Beacon Bay.

64.     All three Defendants caused an out of pocket loss in Plaintiff's IRA account of $161,605.

65.     If all three Defendants had managed Plaintiff's IRA account in a manner consistent with Plaintiff's investment objectives and risk tolerance, Plaintiff would have made $216,180.

66.     It was necessary for Plaintiff to retain the services of Tracy Pride Stoneman of Stoneman Law to represent her in connection with the prosecution of this case. Plaintiff has agreed to pay reasonable and necessary attorney's fees for such legal representation in this case.

67.     The Agreement between Plaintiff and Beacon Bay required that the parties agree to mediate the dispute prior to instituting a lawsuit.

68.     Plaintiff sent all three Defendants a demand letter dated May 12, 2016 asking that the dispute be mediated pursuant to the terms of the Agreement.

**69.**     Defendant Klupsak refused to participate in a mediation, however, Defendant Beacon Bay and Defendant Willis agreed to mediate.  The mediation took place on March 17, 2017 and was unsuccessful.

**70.**     Plaintiff has complied with the terms of the Agreement prior to filing this lawsuit, and all conditions precedent have been performed or have occurred.

**71.**     Plaintiff has sustained actual damages of at least $380,000.

**V.**
**<u>CAUSE OF ACTION</u>**

**Cause of Action – Breach of Fiduciary Duty**

**72.**     In *S.E.C. v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963), the United States Supreme Court held that, under Section 206 of the Investment Advisor's Act, advisers have an affirmative obligation of utmost good faith and full and fair disclosure of all material facts to their clients, as well as a duty to avoid misleading them.

**73.**     Section 206 applies to all firms and persons meeting the Advisers Act's definition of investment adviser, whether registered with the Commission, a state securities authority, or not at all.

**74.**     In California, the law imposes a fiduciary duty on financial advisers to act in the best interests of their clients and their duties "must be exercised with the

11

utmost good faith and integrity." *Twomey v. Mitchum, Jones & Templeton, Inc.*, 262 Cal.App.2d 690 (Cal.App. 1968).

**75.**     As registered investment advisors who effectuated complete control over Plaintiff's IRA accounts, Defendants owed Plaintiff this fiduciary duty of loyalty and good faith.   Defendants breached this fiduciary duty by investing Plaintiff's IRA account contrary to her investment objectives and risk tolerance and engaging in risky option and margin trading.

**76.**     Defendants breached this fiduciary duty by having Plaintiff pay commissions on active trading, on top of fees charged by Defendants.

**77.**     Defendants breached this fiduciary duty by failing to advise Plaintiff of the acts of wrongdoing detailed in this Complaint.   Defendants' breach of fiduciary duty was intentional, justifying an award of exemplary damages pursuant to Chapter 41 of the Texas Civil Practice and Remedies Code.

## Cause of Action -  Breach of Contract

**78.**     Plaintiff incorporates the wrongful acts detailed in paragraphs 1-77.

**79.**     Plaintiff and Defendant Klupsak entered into at least a verbal if not a written agreement prior to March, 2010. Defendant Klupsak breached the agreement by investing Plaintiff's IRA money in a manner that was contrary to her investment objectives and risk tolerance and in a manner not in her best interest.  As a result of this breach, Plaintiff has been damaged in the amount of $106,113.

**80.**     Plaintiff and Defendants Beacon Bay, Willis and Klupsak entered into a written Agreement dated August 13, 2012 that required Defendants to "place and hold the Client's interests above its own, pursue objectivity, and avoid conflicts of interest" and that Defendants would "discern the Client's wants, needs and concerns, then exercise discretion in recommending and providing only those services which address the Client's goals on a value-added basis and discourage those which do not". Defendants breached the Agreement by disregarding Plaintiff's goals and subjecting Plaintiff's IRA account to great risks and unsuitable investments and trading strategy, risks which came to fruition and resulted in an out-of-pocket loss of over $216,180

**Cause of Action – Texas Securities Act**

**81.**     Plaintiff incorporates the wrongful acts detailed in paragraphs 1–80.

**82.**     Defendants violated Art. 581-33-1 of the Texas Securities Act entitled Civil Liability of Investment Advisers and Investment Adviser Representatives. Defendants violated this statute by failing to advise Plaintiff of the speculative option trading and the other acts of wrongdoing that Defendants engaged in, as detailed above, in Plaintiff's IRA account.

**83.**     Defendants violated Art. 581-33 of the Texas Securities Act entitled Civil Liability with Respect to Issuance or Sale of a Security. Defendants are also liable under this article of the Act for offering or selling a security by means of an

untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  Defendants represented in their written Agreement with Plaintiff that they would "place and hold the Client's interests above its own, pursue objectivity, and avoid conflicts of interest" and will "discern the Client's wants, needs and concerns, then exercise discretion in recommending and providing only those services which address the Client's goals on a value-added basis and discourage those which do not." Defendants failed to abide by these statements of material fact, which were not true, thereby damaging Plaintiff. In addition, Defendants omitted to advise Plaintiff of the wrongful acts detailed in the paragraphs above.

84.     Defendants violated Art. 581-33 of the Texas Securities Act entitled Civil Liability with Respect to Issuance or Sale of a Security. Defendants are liable under this article of the Act for offering or selling a security by means of an untrue statement of a material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading. Those untrue statements and omissions are detailed above.

85.     Defendants Beacon Bay and Willis were control persons pursuant to Section E of the statute and are jointly and severally liable with Defendant Klupsak to the same extent as Defendant Klupsak.

**86.**     Defendants Beacon Bay and Wills were control persons and aiders pursuant to Section F of Art. 581-33 and are jointly and severally liable with Defendant Klupsak to the same extent as Defendant Klupsak. Defendants Beacon Bay and Willis were aiders because Defendants Beacon Bay and Wills employed Defendant Klupsak and Defendants Beacon Bay and Willis allowed Defendant Klupsak to commit the wrongdoing described herein.

## Cause of Action - Violation of California Corporate Securities Law Of 1968

**87.**     Plaintiff incorporates the wrongful acts detailed in paragraphs 1–86.

**88.**     Defendants violated Sections 25216, 25400, 25401, 25504, Rule 260.216, Rule 260.218 and Rule 260.218.4 of the California Corporate Securities Law of 1968 (the "Act").

**89.**     Defendants violated the Act in that they had the responsibility to observe high standards of commercial honor and just and equitable principles of trade and engaged in acts, practices and courses of business which operated as a breach of such responsibilities.

**90.**     Defendants, directly and/or indirectly, induced the purchase and/or sale of securities by means of false or misleading statements of material facts and/or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; the

Claimants did not know of the untruths or omissions; and, in the exercise of reasonable care, the Claimants could not have known of the same.

**91.**    Defendants directly and/or indirectly, participated in, materially aided and/or induced the acts or conduct set forth above; did not act in good faith; and therefore are jointly and severally liable for, and to the same extent as, its employees.

## Cause of Action – Violation of the California Consumers Legal Remedies Act

**92.**    Plaintiff incorporates the wrongful acts detailed in paragraphs 1–91.

**93.**    The conduct of Defendants constituted a willful and/or intentional violation of Section 1770 of the Civil Code of the State of California in that they directly and/or indirectly, represented that its services had characteristics and/or benefits which it did not have; Defendants either knew, or by the exercise of reasonable care should have known, that its services did not have the characteristics and/or benefits which had been represented; and by reason of having represented that its services had characteristics and/or benefits which it did not have, Defendants engaged in unfair or deceptive acts or practices.

## Cause of Action - Constructive Fraud under California Civil Code §1573

**94.**    Plaintiff incorporates the wrongful acts detailed in paragraphs 1–93.

**95.**    Defendants are liable to Plaintiff for constructive fraud pursuant to California Civil Code §1573 because they are ones who:

    a.  In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or,

    b.  In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

## Cause of Action - Negligence

**96.**    Plaintiff incorporates the wrongful acts detailed in paragraphs 1–95.

**97.**    Defendants failed to exercise the degree of care that should have been exercised by them under the circumstances and placed their own self-interest ahead of the interests of the Plaintiff.  Defendants failed to exercise the degree of care expected of registered investment advisors in Texas and California, where Plaintiff resides.

**98.**    Defendants were grossly negligent in their handling of Plaintiff's IRA account.

## Cause of Action – Negligent Misrepresentation

**99.**    Plaintiff incorporates the wrongful acts detailed in paragraphs 1–98.

**100.**    Defendants committed wrongful acts including breach of duty, neglect, misstatements and misleading statements, as detailed above.  Defendants held themselves out to Plaintiff as having unique expertise for managing IRA and other funds. Defendants knew that Plaintiff needed such management, because she was inexperienced and unsophisticated regarding investments. Defendants both verbally

and through their contracts represented that they would manage Plaintiff's IRA in accordance with her investment objectives and risk tolerance and by putting her best interests first.  Plaintiff justifiably relied on these representations.  These negligent misrepresentations proximately caused damage to Plaintiff as detailed herein.

# VI.
## DAMAGES

**101.**   Plaintiff has sustained direct actual damages of over $380,000, consisting of over $173,000 from Defendant Klupsak alone and over $216,000 from Defendants jointly and severally.

**102.**   Plaintiff also seeks to recover prejudgment interest as allowed by law and costs of court.

**103.**   Plaintiff also seeks punitive damages pursuant to Section 41.003 of the Texas Civil Practice and Remedies Code and California law.

**104.**   It was necessary for Plaintiff to retain the services of the law firm of Stoneman Law in connection with the prosecution of this action.  Pursuant to Chapter 38 of the Texas Civil Practice and Remedies Code and pursuant to Section 134.005 of the Texas Civil Practice and Remedies Code and pursuant to California law, Plaintiff asks that, upon final hearing, this Court award Plaintiff her reasonable and necessary attorney fees and litigation expenses in this action.

All other and further relief as the Court deems just and equitable under the law.

18

## VII.
## PARTICIPATORY & VICARIOUS LIABILITY

**Joint Enterprise**

**105.**   The Defendants were engaged in a joint enterprise because they had an agreement, express or implied, a common purpose to be carried out by the enterprise, a community of pecuniary interest in that common purpose, and an equal right to direct and control the enterprise.  One or more of the Defendants committed a tort against Plaintiff while acting within the scope of the enterprise.   Therefore, Defendants are each jointly and severally liable for the tortious conduct.

**Agency**

**106.**   To the extent that any Defendant claims to have been an agent of another Defendant, the principle intentionally conferred authority on the agent, intentionally allowed the agent to believe he or she had authority, or through lack of due care, allowed the agent to believe he or she had authority.  The agent was acting within the scope of the agency when dealing with Plaintiff.  Therefore, the principle Defendant is liable for the contracts or torts of the agent Defendant.

**Respondeat Superior**

**107.**   To the extent that any Defendant claims to have been an employee of another Defendant, any acts of such employee Defendant were committed within the scope of the general authority of the employee in furtherance of the employer

19

Defendant's business and for the accomplishment of the object for which the person was employed.  Accordingly, the employer Defendant is liable for any contracts or torts of the employee Defendant.

## **PRAYER**

Based upon the foregoing, Plaintiff prays that Defendants Beacon Bay, Klupsak and Willis be summoned to appear and answer this complaint, and that upon trial, this Court grant judgment in favor of Plaintiff against Defendants Beacon Bay, Klupsak and Willis, jointly and severally, for its actual damages, attorney fees, exemplary damages, statutory additional damages, and prejudgment interest. Plaintiff prays for post-judgment interest, court costs, and for general relief.

Date:  August 21, 2017

Respectfully submitted,

*/s/ Tracy Stoneman*

_____

**Tracy Stoneman**
State Bar No. 19309750
Email:  Tracy@brokeragefraud.com

**STONEMAN LAW**
301 Snowcrest
Westcliffe, CO 81252
Telephone:  719-783-0303
Facsimile:   214-853-9300

John M. Frick
State Bar No. 07455200
Email:  jfrick@bennettweston.com

**BENNETT, WESTON, LAJONE
& TURNER, P.C.**
1603 LBJ Freeway, Suite 280
Dallas, TX  75234
Telephone:  972-662-4901
Facsimile:  214-393-4043

**ATTORNEYS FOR PLAINTIFF
ANNMARIE MOTA**